[No. 24932-1-I.   Division One.   August 10, 1992.]

THE STATE OF WASHINGTON, *Appellant,* v. GARY M. CARLSON, *Respondent.*

On Motion To Disqualify Judge, Vacate Opinion, for Appointment of New Panel, and for New Argument; and Motion for Reconsideration.

910

*Norm Maleng, Prosecuting Attorney,* and *Michele Shaw, Deputy,* for appellant.

*Malcolm L. Edwards, Catherine Wright Smith,* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for respondent.

FORREST, BAKER and AGID, JJ. — This appeal from a King County Superior Court order granting a new trial was argued on January 22, 1991. The opinion of the court, reversing the new trial order and reinstating the jury verdict of guilty of first degree child rape and first degree child molestation, was filed on July 15, 1991, followed by a motion for reconsideration filed on July 29. Thereafter, prior to the ruling of the court on the motion for reconsideration, respondent/cross appellant Gary M. Carlson filed a motion to disqualify a member of the panel, to vacate the opinion, and for appointment of a new panel and reargument of the case. We deny each motion.

Carlson's motions to disqualify are based upon alleged appearances of impropriety on the part of Judge Susan R. Agid. No concerns of actual bias are involved. None is alleged, and none exists.

Carlson raises no additional or independent allegations of bias or appearance of impropriety against the remainder of the panel. Rather, Carlson alleges that the participation of Judge Agid in the decision of this case has irretrievably

tainted the panel. Carlson's argument in this regard is unadorned by any citations to legal authority or references to fact. We discern no inherent validity to the argument. Thus, if we were to reach the issue, we would be strongly inclined to deny the motion because it was inadequately briefed and presented. It is unnecessary to reach the issue, however, because we reject Carlson's argument that Judge Agid's participation in this case was in any way improper.

We therefore consider the main thrust of Carlson's various motions: that Judge Agid has violated the appearance of impartiality by her participation in the decision of this case. Carlson advances two reasons in support of his argument: (1) Judge Agid's participation in a program known as "Kids Court"; and (2) the participation of King County Prosecuting Attorney Norm Maleng in Judge Agid's reelection campaign in the fall of 1991.

## Kid's Court

Kid's Court is a program designed to prepare children who are alleged victims of sexual abuse and assault for their appearance in a courtroom trial setting. The program includes elements of role playing involving a judge, prosecutor and other courtroom personnel. There is no discussion of the facts about any particular child's case. The focus of the program is to demystify the courtroom for young children who will be required to testify. Judge Agid participated as a judge in the program during two 2-hour sessions. There is no indication whatsoever that the victim in this case participated in the program, or that Judge Agid ever had any direct contact with her.

Carlson's argument is that any judge who has participated in the Kid's Court program has, of necessity, compromised his or her ability impartially to decide issues of credibility and reliability of testimony from any child witness. This is an absurd argument, and we reject it totally. Reduced to its most simple formulation, Carlson's argument is that whenever a judge has received special training or participated in the presentation of programs as to any given

legal subject, the judge must be disqualified from sitting on any case in the future involving such issues. Thus, a judge who sits on the Minority and Justice Task Force, or participates as a panelist in any of its sensitivity training sessions, would be disqualified from hearing any case involving issues of minorities and the law. Likewise, a judge who sits on the Gender and Justice Implementation Committee, or participates as a panelist in any of the training programs fostered by such committee, would never be able to sit on a case involving any of the many gender issues in the law. A judge who either comes to the bench with specialized training and experience in a given field of law, or lectures in continuing legal education seminars in a given legal field would, if we adopted Carlson's argument, be prohibited from hearing cases involving issues arising in that legal field.

■ To state Carlson's argument is to refute it. The people of this state will be best served by a legal system which encourages judges to enhance their own and others' awareness of legal issues and develop their legal knowledge and skills. Without any support for his argument, Carlson confuses a judge's efforts to improve the legal system with an assumption of biased advocacy which prevents a judge from exercising the independent judgment and consideration required in the exercise of the judge's professional responsibilities.

PROSECUTOR'S PARTICIPATION IN REELECTION CAMPAIGN

King County Prosecuting Attorney Norm Maleng served as honorary cochair and nominal finance chair of Judge Agid's campaign for reelection to this court. Mr. Maleng's participation in that capacity was disclosed in Judge Agid's Public Disclosure Commission filing in April 1991. Judge Agid's reelection campaign garnered widespread support from all elements of the practicing bar, including many lawyers who specialize in representation of criminal defendants, both at the trial and appellate levels.

Carlson argues that Maleng's participation in Judge Agid's reelection campaign required Judge Agid to recuse

herself from any participation in this case.[1] In the alternative, Carlson argues that if recusal is not mandated, Judge Agid and the panel should exercise their discretion to recuse from the case due to the appearance of partiality.

By way of background to our discussion of this issue, several relevant dates should be kept in mind:

1/22/91  Oral argument in State v. Carlson
4/1/91   Public Disclosure Commission filing listing Judge Agid's election committee, including Mr. Maleng
7/15/91  Opinion filed
7/29/91  Motion for reconsideration filed
9/5/91   Appellant's counsel learns of Mr. Maleng's role in campaign
9/13/91  Motion to disqualify filed

We note that no case has been cited in which an issue of "appearance of fairness" has caused reargument to be ordered by a Supreme Court or granted by an appellate court, much less a vacation of a judgment based upon lack of an "appearance of fairness". While a failure to cite supporting authority would justify a refusal to consider the issues raised, we deem the integrity of the judicial process of fundamental importance to our constitutional system, and thus, we will proceed to respond substantively to Carlson's arguments.

Carlson's principal reliance in support of his mandatory recusal argument is on Ethics Advisory Committee (EAC) opinion 88-7, issued March 16, 1988:

> A lawyer, who has formed a campaign committee for the judge's candidacy for the court of appeals, may practice before a superior court judge only if there is a full disclosure of the campaign relationship and the lawyers and parties, independently of the judge's participation, all agree in writing that the campaign relationship is immaterial.

---

[1]Mr. Maleng does not personally argue cases. He appears through his deputies as he did in this case. Thus, by logical extension, Carlson's argument would disqualify Judge Agid from hearing any case in which the office of the King County Prosecuting Attorney appeared.

Obviously the opinion is not directly applicable to appellate proceedings, where the matter is submitted to a multiple judge panel for decision, nor does it address any duty of the judge, as opposed to the attorneys. Nevertheless, Carlson argues that the opinion does apply by analogy, and that there was no disclosure. Accepting the analogy for purposes of our discussion, we disagree with Carlson's premise that there was no disclosure by Judge Agid. This case was argued in January 1991. Approximately 9 weeks later, and over 3 months prior to the filing of the opinion in this case, Judge Agid filed her campaign election committee disclosure form with the Public Disclosure Commission. That filing listed the members of her election committee, including Mr. Maleng.

■ Once the requirements of the public disclosure act, RCW 42.17, become applicable to a judge who is seeking to retain her position, compliance with those requirements satisfies the judge's duty to disclose as to the matters covered therein. Disclosures made pursuant to that law are disclosures to the public. Appellant and his counsel are members of the public, and are therefore charged with notice of the information contained in the Public Disclosure Commission filing.

■ ■ In addition, counsel are not only members of the general public, but are also customarily active contributors to and participants in judges' campaigns for election. We believe it is fair to observe that lawyers generally have a heightened interest in judicial elections beyond that of the average citizen. If counsel has any concerns about campaign relationships involving a judge before whom counsel is appearing, counsel has an affirmative obligation to check with the Public Disclosure Commission during the time periods relevant to the election campaign.

Since there was no campaign and therefore no public record disclosing Mr. Maleng's role in Judge Agid's campaign as of the date of oral argument, counsel cannot be faulted for not requesting Judge Agid's recusal prior to

argument. However, following oral argument there is a substantial period of opinion writing and consultation among the panel before an appellate decision is announced. Maleng's role was publicly disclosed a full 3 months before the opinion in this case was filed. It is manifestly unfair to the court and the opposing party, as well as wasteful of judicial resources, to allow the process to go forward in hopes of a favorable decision and then move for disqualification upon learning of an adverse decision. While counsel is not expected to monitor Public Disclosure Commission filings every day, the duty is to reasonably monitor. We find it unnecessary to determine exactly what that minimum time is, since in this case counsel made no inquiry for over 3 months, a clearly unreasonable delay. Failure to act during this period makes the motion untimely. Accordingly, we do not feel called upon to decide whether it would be "an abuse of discretion" for Judge Agid and the panel to refuse to honor a motion for a recusal or disqualification if timely made before issuance of the opinion.

Counsel's failure to pay any attention to Judge Agid's well-publicized campaign and Mr. Maleng's role therein suggests that in fact counsel was not concerned about any such participation. Just as one cannot seek a new trial based on newly discovered evidence when counsel has failed to use due diligence to find such evidence, one cannot seek reargument after an adverse decision when counsel has failed to use due diligence to inform himself about any possible basis for a motion to recuse.

If counsel or a litigant has reason to believe that a judge of the panel should be disqualified, he must act promptly. There are important reasons to place the responsibility on counsel to request a recusal. Only counsel and the litigant are in a position to determine whether circumstances give rise to a concern on their part as to possible bias or unfairness. The fact that lawyer A is on a judge's campaign committee might be of absolutely no concern to opposing counsel X, but might be of great concern to opposing counsel Y or his client. Although there is no appellate equivalent for

RCW 4.12.050,[2] elementary considerations of fairness would require careful consideration of a request for recusal. However, when a party or counsel has a reasonable and justifiable concern that a judge will be biased or unfair he has an obligation to move as promptly as possible to request that the judge recuse herself so as to minimize any disruption or delay in the appellate process. He cannot wait until he has received an adverse ruling and then move for disqualification.[3]

Although we have ruled that the motion here was untimely, the importance of the issue prompts us to address it on the merits. Canon 3(C)(1) of the Code of Judicial Conduct states:

(C) Disqualification.
(1) Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where:

---

[2]RCW 4.12.050 provides:
"**Affidavit of prejudice.** Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge: *Provided,* That such motion and affidavit is filed and called to the attention of the judge before he shall have made any ruling whatsoever in the case, either on the motion of the party making the affidavit, or on the motion of any other party to the action, of the hearing of which the party making the affidavit has been given notice, and before the judge presiding has made any order or ruling involving discretion, but the arrangement of the calendar, the setting of an action, motion or proceeding down for hearing or trial, the arraignment of the accused in a criminal action or the fixing of bail, shall not be construed as a ruling or order involving discretion within the meaning of this proviso; and in any event, in counties where there is but one resident judge, such motion and affidavit shall be filed not later than the day on which the case is called to be set for trial: *And provided further,* That notwithstanding the filing of such motion and affidavit, if the parties shall, by stipulation in writing agree, such judge may hear argument and rule upon any preliminary motions, demurrers, or other matter thereafter presented: *And provided further,* That no party or attorney shall be permitted to make more than one such application in any action or proceeding under this section and RCW 4.12.040."

[3]*See State v. Dennison,* 115 Wn.2d 609, 619, 801 P.2d 193 (1990). Because of the same concerns an affidavit of prejudice pursuant to RCW 4.12.040 must be filed before the trial court makes a discretionary ruling.

None of the listed instances have any application to the facts before us.[4] This is some indication that campaign relationships were not within the purview of the canon. This view is reinforced by the fact that CJC Canon 7(B), which deals explicitly with campaign practices, likewise does not address the facts before us.

Although CJC Canon 3(C)(1) uses the word "should" rather than "must", we think that as to the specifically listed instances a judge's duty to recuse is clear and nondiscretionary. However, the canon recognizes that there may arise other factual situations where the judge's impartiality might be reasonably subject to question. As to these, the judge's decision will necessarily involve the exercise of discretion. It is impossible to make a flat, unequivocal rule governing every conceivable factual situation. The case at hand is a good example. In many cases the lawyer's role in a judicial campaign would clearly not raise any question as to the appearance of fairness. On the other hand, unquestionably

---

[4] CJC Canon 3(C)(1) provides in pertinent part:

"(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

"(c) the judge knows that, individually or as a fiduciary, the judge or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

"(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

"(i) is a party to the proceeding, or an officer, director, or trustee of a party;

"(ii) is acting as a lawyer in the proceeding;

"(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

"(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

"(2) Judges should inform themselves about their personal and fiduciary financial interests, and make a reasonable effort to inform themselves about the personal financial interests of their spouse and minor children residing in their household."

there can be such a relationship between the judge and the lawyer that the judge should clearly recuse. *See, e.g., Caleffe v. Vitale*, 488 So. 2d 627, 65 A.L.R.4th 67 (Fla. Dist. Ct. App. 1986), discussed *infra.*

██ Directly addressing the language of the canon, the issue becomes whether participation of the prosecuting attorney as a cochair of Judge Agid's campaign would cause the judge's impartiality to be reasonably questioned. The inquiry in regard to appearance of fairness was formulated in *Chicago, M., St. P. & Pac. R.R. v. State Human Rights Comm'n*, 87 Wn.2d 802, 810, 557 P.2d 307 (1976), involving an administrative hearing tribunal: "Basically, the critical concern in determining whether a proceeding satisfies the appearance of fairness doctrine is how it would appear to a reasonably prudent and disinterested person." This is not a question which can be answered in the abstract. The answer necessarily depends on such considerations as the specific role of the prosecuting attorney in the case at hand, the size of the county involved, or the presence of unusual circumstances such as extensive publicity surrounding the case at hand or controversy over the prosecutor's handling of certain cases.

██ Moreover, we note that there is a vast difference between the role of a trial judge and the role of an appellate judge insofar as the possibility of a personal relationship such as a campaign chairmanship improperly influencing a judge. That difference in turn is relevant to whether a reasonable person would perceive an appearance of impropriety. Notably there is no appellate equivalent of RCW 4.12.050 permitting a litigant to require disqualification of a trial judge upon an assertion of bias or prejudice without stating any factual basis therefor. At least two policy considerations are significant in this context. First, in the appellate system no one judge controls a 3-judge panel. When, as in this case, the panel is unanimous, a litigant is protected by the fact that two other judges have agreed with the decision. The second is that decisions in the Court of Appeals almost exclusively involve legal issues with very

little room for the exercise of discretion. Appellate judges are required to issue written opinions which are subject to objective examination and review. In contrast, there is vast discretion vested in a trial judge and often no reasons need be given for the exercise of such discretion. Accordingly, it might often be difficult to tell whether any improper motive entered into a trial court's decision.

Clearly, if the prosecuting attorney himself were arguing the case, a legitimate question would arise. EAC opinion 88-7, heavily relied upon by Carlson, places the duty to disclose active participation in a judicial campaign only on the lawyer *actually appearing in court*. Notably, the opinion does not extend to an attorney's partner's role in the campaign. The opinion thus emphasizes the overriding significance of the personal presence in the courtroom of the lawyer associated with the judge's campaign. That, of course, is not the case before us. Carlson asserts that because of the structure of the prosecuting attorney's office, this case should be judged as if Mr. Maleng personally appeared and argued the case before Judge Agid. We disagree. Although Mr. Maleng may hire and supervise his deputy prosecuting attorneys, we believe that the association between two law partners is far closer and that there is a much greater community of interest between them than between a deputy prosecuting attorney and Mr. Maleng. Nor is the fact that the pleadings are signed in Mr. Maleng's name of any significance. Pleadings from private law firms are customarily signed in the firm's name and yet under the ethics committee opinion the partner's role need not be disclosed. In this connection, CJC Canon (3)(C)(1)(b), dealing with past associations between a lawyer and a judge, has the following comment: "Lawyers in a governmental agency do not necessarily have an association with other lawyers employed by that agency within the meaning of this subsection[.]" The comment addresses a different issue, where the judge prior to assuming judicial office had served in a public agency while another lawyer in that agency was dealing with the case. However, if two lawyers serving the same

agency are not "in association" for purposes of judicial disqualification on such facts, they would not be deemed to have such an association as to require the trial lawyer to inform an opponent of the role of another lawyer in the agency in a judicial campaign.

In a small county where the prosecuting attorney's office may consist of three or four deputies, the prosecuting attorney would likely be familiar with each of the criminal cases pending in his or her office, and might frequently participate in discussion and preparation of cases which he or she does not personally try. In such a case, a close question could arise as to whether it would be incumbent upon the judge to ascertain whether the defense had any objection to the judge hearing the trial.

However, a county such as King County, with over 100 criminal deputies trying thousands of criminal cases per year, presents a totally different situation. In such a county, the prosecuting attorney would generally have no direct participation in or knowledge of any individual case, nor any particular concern about the outcome other than that the State's case was fairly and competently presented. Absent special circumstances, in such a case a reasonable trial judge would have no reason to anticipate questions as to the appearance of fairness solely because of the prosecuting attorney's role in the campaign. A fortiori, an appellate judge should have no such concern.

Due to the importance of the issue raised, lack of controlling precedent should not foreclose a careful review of the issue. However, it is significant that our review of the authorities discloses that no case has held or even suggested that a reasonable judge in the position of Judge Agid would anticipate that Mr. Maleng's activities in her campaign would generate reasonable doubts as to her impartiality in a criminal appeal from King County.

Carlson relies primarily on three Washington cases: *Chicago, Milwaukee*, 87 Wn.2d 802; *State v. Madry*, 8 Wn. App. 61, 504 P.2d 1156 (1972); and *Diimmel v. Campbell*, 68 Wn.2d 697, 414 P.2d 1022 (1966). Each case dealt with a

disqualification of a trial judge, not an appellate judge. In *Diimmel*, the trial court had granted a motion for judgment notwithstanding the verdict in a suit to quiet title to land. Apparently, the judge's former law partner had written a letter to one of the litigants some years before reaching the same conclusion as the trial court. A motion for new trial was filed, alleging that the judge had prejudged the case. The trial judge granted the motion upon being shown the letter, although the judge stated he had no independent recollection of the letter at the time of his decision. The Supreme Court held that the trial court did not abuse its discretion in granting the motion for the new trial. *Diimmel*, 68 Wn.2d at 699. Significantly, the opinion does not hold that it would have been an abuse of discretion *not* to grant the motion, and thus the case does not support Carlson's contentions.

In *Madry*, the trial court had been involved in an investigation of the defendant's business. The reviewing court held that the judge should have disqualified himself due to unfavorable personal knowledge he had about the defendant. These are substantially different facts from those presented in the case at bar. *Madry*, 8 Wn. App. at 70. Finally, *Chicago, Milwaukee* involved an adjudication before an administrative tribunal. One of the members of the tribunal, which was appointed by the Human Rights Commission, was in the process of applying for a job with the Commission. The court ruled that the appearance of fairness had been violated. *Chicago, Milwaukee*, 87 Wn.2d at 810. We find these facts to be distinguishable. Unlike the case at bar, the conflict of a person passing judgment on the validity of a complaint filed by a government agency with whom that person is seeking employment is patent on its face.

Carlson also cites *Caleffe v. Vitale*, 488 So. 2d 627, 65 A.L.R.4th 67 (Fla. Dist. Ct. App. 1986), which is somewhat factually similar. In *Caleffe*, the husband in a dissolution proceeding made a motion for disqualification of the judge on the basis that the wife's lawyer was running the judge's reelection campaign. The reviewing court granted a writ of

prohibition directing the trial court to step down. *Caleffe*, 488 So. 2d at 629. Three significant factors distinguish that case from the case at bar. First, the lawyer in the judge's campaign was personally trying the case. That is the situation addressed in EAC opinion 88-7 and not the situation here. Second, the motion was made before the trial court had made any rulings, thus it was timely. Third, there was some evidence in *Caleffe* that the wife's lawyer was trying to improperly exert influence. *Caleffe*, 488 So. 2d at 629.

For the foregoing reasons, we conclude that a "reasonably prudent and disinterested person" would not have concerns as to the fairness of Judge Agid's decision in this case. *Chicago, Milwaukee*, 87 Wn.2d at 810. It follows that Judge Agid breached no requirement of judicial ethics in failing to recuse herself on her own motion when Mr. Maleng became active in her campaign.[5]

Review denied at 120 Wn.2d 1022 (1993).

---

[5]A number of Texas cases have been cited by the State to support its argument that Judge Agid had no duty to recuse herself. However, we do not follow the reasoning of the Texas courts in that we do not feel they adequately account for concerns as to the appearance of fairness. *J-IV Invs. v. David Lynn Mach., Inc.*, 784 S.W.2d 106 (Tex. Ct. App. 1990); *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768 (Tex. Ct. App. 1987); *Rocha v. Ahmad*, 662 S.W.2d 77 (Tex. Ct. App. 1983).