202 P.3d 962 (2009)
Jamshid FAGHIH, D.D.S., Appellant,
v.
WASHINGTON STATE DEPARTMENT OF HEALTH, DENTAL QUALITY ASSURANCE COMMISSION, Respondent.
No. 61652-8-I.
Court of Appeals of Washington, Division 1.
February 17, 2009.
*964 Kristin G. Brewer, Office of the Attorney General, Olympia, WA, for Respondent.
Department of Health, Adjudicative Service Unit, Tumwater, WA, pro se.
Nicole K. McGrath, John Cornelius Versnel, III, Vanessa Vanderbrug, Lawrence & Versnel, PLLC, Seattle, WA, for Appellant.

PUBLISHED IN PART
COX, J.
¶ 1 In this case, we review a final order of the Department of Health's Dental Quality Assurance Commission stating that Dr. Jamshid Faghih, D.D.S., violated the Uniform Disciplinary Act by his unprofessional conduct in treating a patient. The presiding officer at the administrative hearing did not abuse his discretion by denying Dr. Faghih's request that another member of the panel hearing the case recuse herself from the hearing. Dr. Faghih fails to prove beyond a reasonable doubt that WAC 246-817-310 is void for vagueness. Because the other arguments that Dr. Faghih makes are unpersuasive, we affirm.[1]
¶ 2 Dr. Jamshid Faghih, D.D.S., has been licensed as a dentist in Washington since October 1999. In April 2003, Dr. Faghih saw Patient A as a result of a referral for examination and consultation for root canal evaluation and treatment.
¶ 3 Dr. Faghih diagnosed irreversible pulpitis in Patient A's tooth number 18 by using a probe to test for pain. He recommended that Patient A have a root canal on the tooth. Dr. Faghih also recommended the same procedure for Patient A's tooth number 19, which exhibited obvious decay into the pulp *965 with irreversible pulpitis. Dr. Faghih performed root canal procedures on both teeth.
¶ 4 More than a year later, Patient A visited another dentist for pain in the same two teeth. The dentist recommended that Patient A either go back to Dr. Faghih or to an endodontist for evaluation and possible re-treatment. A third dentist ultimately performed additional root canals on Patient A's teeth number 18 and 19 due to infection. This dentist found an untreated canal in tooth number 19.
¶ 5 Patient A filed a complaint with the Department of Health Dental Quality Assurance Commission, claiming that Dr. Faghih had been negligent in treating him. After investigating the allegations of the complaint, the Commission filed a statement of charges against Dr. Faghih for unprofessional conduct for violating RCW 18.130.180(4) and (7) and WAC 246-817-310.
¶ 6 The Commission held a hearing on the charges in the spring of 2007. A health law judge served as presiding officer for the panel hearing the case. Four Commission members, three of whom are dentists, also sat on the panel.
¶ 7 During pre-hearing motions, Dr. Faghih moved to disqualify panel member Robin Reinke, D.D.S., for bias. The presiding officer denied the motion, but stated that he "would readdress the issue" should "something present itself further on in [the] proceedings." Dr. Faghih did not renew his motion.
¶ 8 Following the presentation of all the evidence, the Commission entered its amended findings of fact, conclusions of law, and a final order against Dr. Faghih. In essence, the Commission determined that Dr. Faghih's treatment of the patient constituted unprofessional conduct in violation of RCW 18.130.180(4) and (7) and WAC 246-817-310. After considering aggravating and mitigating factors, the Commission imposed sanctions, including probation, educational requirements, and unannounced chart audits.
¶ 9 Dr. Faghih petitioned the superior court for judicial review pursuant to RCW 18.130.140 and RCW 34.05.570. The superior court affirmed the Commission's final order.
¶ 10 Dr. Faghih appeals.

DISQUALIFICATION MOTION
¶ 11 Dr. Faghih argues that the presiding officer improperly failed to disqualify Dr. Reinke for bias. He argues that her presence on the panel violated the appearance of fairness doctrine. We disagree.
¶ 12 The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of agency decisions.[2] A decision of an administrative agency may be reversed if "[a] motion for disqualification under RCW 34.05.425 ... was made and was improperly denied ...[.]"[3]
¶ 13 In the administrative law context, our supreme court has recognized that at least three types of bias call for disqualification.
These are (1) prejudgment concerning issues of fact about parties in a particular case; (2) partiality evidencing a personal bias or personal prejudice signifying an attitude for or against a party as distinguished from issues of law or policy; and (3) ... an interest whereby one stands to gain or lose by a decision either way.[[4]]
A judge or administrative agency is presumed not to be biased.[5] A person alleging bias must make an affirmative showing to that effect.[6]
¶ 14 The supreme court has applied the appearance of fairness doctrine "to administrative tribunals acting in a quasi-judicial capacity in two circumstances: (1) when an agency has employed procedures that created the appearance of unfairness ... and (2) when one or more acting members of the *966 decision-making bodies have apparent conflicts of interest creating an appearance of unfairness or partiality...."[7] The test is whether "`a disinterested person, having been apprised of the totality of a board member's personal interest in a matter being acted upon, [would] be reasonably justified in thinking that partiality may exist[.]'"[8]
¶ 15 The presumption is that public officers will properly and legally perform their duties until the contrary is shown.[9] A party claiming an appearance of fairness violation is required to present specific evidence of a violation, not speculation.[10]
¶ 16 The common law rules that apply to judges regarding disqualification for conflict of interest also apply to administrative tribunals.[11] Outside of scenarios involving a clear and nondiscretionary duty to recuse or disqualify, the decision "`will necessarily involve the exercise of discretion.'"[12] We review for abuse of discretion.
¶ 17 Dr. Faghih has failed in his burden to overcome the presumption that the challenged panel member would properly and legally perform her duties in deciding this case. This record shows that counsel for Dr. Faghih stated that Dr. Reinke had been a witness in a past case and that he had to subpoena her to obtain her appearance in that case. Counsel claimed there had been quite a bit of animosity in that process, but did not specify by whom. On this basis, counsel insisted that Dr. Reinke would be prejudiced against Dr. Faghih.
¶ 18 In response, the presiding officer questioned Dr. Reinke. She responded by stating that she did not know Dr. Faghih, knew nothing about the current case, and that she recognized that counsel for Dr. Faghih was just doing his job. She also stated that she had no ill will toward him. When asked by the presiding officer whether she felt she would be prejudiced or unable to make a fair and impartial ruling in this case, she replied in the negative.
¶ 19 We fail to see how alleged bias against counsel in a prior case somehow transfers to bias against counsel's client in this case under the circumstances here. There is neither an allegation nor proof of any pecuniary or other interest of Dr. Reinke in the outcome of this case. She did not know Dr. Faghih when this case began. Moreover, there is nothing to show Dr. Reinke prejudged any issue in this case. In short, Dr. Faghih bases his assertion of bias on mere speculation, which is unsupported by either the record or logic. The presiding officer properly rejected this unpersuasive attempt to disqualify Dr. Reinke as a panel member.
¶ 20 Dr. Faghih relies on Chicago, Milwaukee, St. Paul and Pacific R.R. Co. v. Washington State Human Rights Commission[13] to argue that the appearance of fairness doctrine demands that "even a mere suspicion of irregularity, or an appearance of bias or prejudice, is to be avoided by the judiciary in the discharge of its duties."[14] But in that case, the supreme court found an impermissible conflict of interest where a tribunal member had a job application pending with a party to a hearing.[15] Neither the facts nor the reasoning in that case require reversal here.
¶ 21 Dr. Faghih also cites to several cases involving juror bias for support. But the analogy between juror bias and panel member bias is only correct insofar as the Commission panel members also serve as fact-finders. *967 The hearing panel in this case was appointed by the Commission to evaluate the evidence and determine whether the facts constituted unprofessional conduct in violation of RCW 18.130.180 and the related regulations. The panel functioned not only as a trier of fact but also as the ultimate decision-maker, not unlike a judge in a bench trial.[16] The cases cited by Dr. Faghih address juror rather than judicial bias. Two cases involved jurors whose statements revealed their prejudgment of the issues.[17] The other two cases involved bias due to the jurors' direct personal and professional relationships with trial participants.[18] None applies here.
¶ 22 Dr. Faghih next claims, for the first time on appeal, that the presiding officer's off-the-record conversation with Dr. Reinke was improper as an ex parte communication. The Commission responds in two ways. First, it claims that the issue was not properly preserved below. Second, it contends that the off-the-record communication is supported by RCW 34.05.455(1)(a).[19] We agree with the Commission's first argument and express no opinion as to its second argument.
¶ 23 The APA precludes appellate review of issues not raised before the agency, subject to specified exceptions.[20] Dr. Faghih does not argue that any of the statutory exceptions apply here.
¶ 24 In asking us to review this issue for the first time on appeal, Dr. Faghih cites to RAP 2.5(a), but provides no argument as to why or how it applies to this case. We cannot think of any reason why that RAP should apply here.
¶ 25 He also argues that both RCW 34.05.554 and RAP 2.5 contain permissive language that give this court discretion to review an issue for the first time on appeal. This statement is simply inadequate to persuade us that we should exercise our discretion and address the issue. Accordingly, we do not address his claim of ex parte communication.
¶ 26 For the first time in his reply brief, Dr. Faghih argues that Dr. Reinke's participation at the hearing actually prejudiced him.[21] Specifically, he claims that her *968 questions during his examination at the hearing were somehow improper.
¶ 27 We do not reach that issue for two reasons. First, Dr. Faghih failed to object to the questioning during the hearing and, therefore, has not preserved the issue for review. This is particularly important here because the presiding officer expressly offered him the opportunity to object during the hearing. Second, he first raised the argument in a reply brief, an approach that we do not generally permit.[22]

VOID FOR VAGUENESS
¶ 28 Dr. Faghih argues that WAC 246-817-310 is unconstitutionally vague as applied to him. We disagree.
¶ 29 A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.[23] The purpose of the vagueness doctrine is to ensure that citizens receive fair notice as to what conduct is proscribed and to prevent the law from being arbitrarily enforced.[24] The prohibition against vague laws is not absolute. Some measure of vagueness is inherent in the use of language.[25] The court should not analyze portions of a statute in isolation from the context in which they appear.[26] If a statute can be interpreted to have the required degree of specificity as a whole, then it can withstand a vagueness challenge despite its use of a term which has no determinate meaning when considered in isolation.[27]
¶ 30 Administrative regulations are presumed to be constitutional.[28] The party challenging a statute or regulation's constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt.[29]
¶ 31. In relevant part, WAC 246-817-310 requires dentists in Washington to maintain complete treatment records:
Any dentist who treats patients in the state of Washington shall maintain complete treatment records regarding patients treated. These records shall include, but shall not be limited to X rays, treatment plans, patient charts, patient histories, correspondence, financial data and billing.[[30]]
¶ 32 Here, the Commission concluded that Dr. Faghih failed to maintain complete treatment records within the meaning of this provision because he failed to document any "appropriate workup" of reliable testing before diagnosing tooth number 18, violating RCW 18.130.180(7) (incorporating WAC 246-817-310).
¶ 33 Dr. Faghih claims that the requirement that he maintain "complete" records is unconstitutionally vague as applied to him. He claims that he had to inappropriately "guess" at what the standards of appropriate charting are and that the regulation does not have adequate standards to prevent arbitrary enforcement.
¶ 34 Our supreme court has addressed vagueness challenges to portions of professional disciplinary statutes in Haley v. Medical Disciplinary Board[31] and Heinmiller v. Department of Health.[32] These cases are instructive to our analysis here. In both cases, the court considered whether the term "moral turpitude" in the uniform disciplinary *969 act was unconstitutionally vague. Reading the statute in context, the court interpreted the statute as prohibiting "conduct indicating unfitness to practice the profession."[33] The court in Heinmiller, following Haley, noted that "whether particular conduct renders a professional unfit to practice is determined in light of the purpose of professional discipline, and `the common knowledge and understanding of members of the particular profession.'"[34] The primary purpose of professional discipline is to protect the public.[35]
¶ 35 Consequently, in both Heinmiller and Haley, the court concluded that the statute prohibiting health professionals from committing acts involving "moral turpitude" was not void for vagueness when "construed in relation to the purposes of professional discipline, considered in the context of a specific application, and supplemented by the shared knowledge and understanding" of members of the particular profession.[36]
¶ 36 The same reasoning applies here. The challenged regulation relates to professional standards and discipline, and must therefore be construed in relation to the purposes of professional discipline. This includes protecting the public. We must also take into account that the Commission considered the meaning of "complete" specifically with respect to Dr. Faghih's charts, which did not show that he conducted certain reliable tests before diagnosis. Finally, we recognize that Dr. Faghih's peer dentists applied their shared knowledge and understanding to determine that he had not maintained "complete" records.
¶ 37 Moreover, we also agree with the Commission that Dr. Faghih's vagueness argument should fail because his failure to include reference to the tests or their results rendered his file incomplete by any definition. The Commission did not arbitrarily enforce the regulation against Dr. Faghih. His vagueness challenge fails.
¶ 38 In his brief, Dr. Faghih specifically challenges the term "complete charting." Because that phrase does not appear in the regulation, we will not address this argument.
¶ 39 Dr. Faghih's remaining vagueness arguments concern his assessment of the retreating dentist's records as compared with his own. But "one to whose conduct a statute clearly applies may not challenge it on the grounds that it is vague as applied to the conduct of others."[37] Moreover, the adequacy of the retreating dentist's records was not the issue before the Commission.
¶ 40 We affirm the order of the Commission.
¶ 41 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.
WE CONCUR: DWYER, A.C.J., and ELLINGTON, J.
NOTES
[1] We deny Dr. Faghih's motion to modify the clerk's ruling denying his motion to continue oral argument.
[2] RCW 34.05.570; Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993).
[3] RCW 34.05.570(3)(g).
[4] Ritter v. Bd. of Comm'rs of Adams County Public Hospital Dist. No. 1, 96 Wash.2d 503, 512, 637 P.2d 940 (1981).
[5] See id. at 513, 637 P.2d 940.
[6] Id. at 512, 637 P.2d 940.
[7] City of Hoquiam v. Public Empl. Relations Comm'n, 97 Wash.2d 481, 488, 646 P.2d 129 (1982) (citations omitted).
[8] Id. (quoting Swift v. Island County, 87 Wash.2d 348, 361, 552 P.2d 175 (1976)).
[9] Id. at 489, 646 P.2d 129 (quoting Rosso v. State Pers. Bd., 68 Wash.2d 16, 20, 411 P.2d 138 (1966)).
[10] Sherman v. Moloney, 106 Wash.2d 873, 883-84, 725 P.2d 966 (1986).
[11] Hill v. Dep't of Labor & Indus., 90 Wash.2d 276, 279-80, 580 P.2d 636 (1978).
[12] State v. Chamberlin, 161 Wash.2d 30, 37 n. 4, 162 P.3d 389 (2007) (quoting State v. Carlson, 66 Wash.App. 909, 918, 833 P.2d 463 (1992)).
[13] 87 Wash.2d 802, 557 P.2d 307 (1976).
[14] Chicago, 87 Wash.2d at 809, 557 P.2d 307.
[15] Id. at 806, 557 P.2d 307.
[16] See id. at 806-07, 557 P.2d 307.
[17] See City of Cheney v. Grunewald, 55 Wash. App. 807, 780 P.2d 1332 (1989) (juror should have been excused for cause where he stated he would not want six jurors with his frame of mind on jury); Brown v. S.H. Kress & Co., 170 S.C. 178, 170 S.E. 142 (1933) (qualification of a juror is not to be determined alone by the fact that he declares his fairness; juror should have been excused where he stated he thought it was wrong to enter suits against the defendants).
[18] See People v. Branch, 46 N.Y.2d 645, 415 N.Y.S.2d 985, 389 N.E.2d 467 (1979) (juror's professional and personal relationship with prosecutor rendered him unsuitable for jury service); State v. Boiko, 138 Wash.App. 256, 156 P.3d 934 (2007) (fact that juror, who was an attorney, was married to a key witness, had previously applied for a job with the prosecutor, and was involved in ongoing litigation as opposing counsel to prosecutor were sufficient to establish implied bias).
[19] (1) A presiding officer may not communicate, directly or indirectly, regarding any issue in the proceeding ... with any person employed by the agency without notice and opportunity for all parties to participate, except...:

(a) Where the ultimate legal authority of an agency is vested in a multimember body, and where that body presides at an adjudication, members of the body may communicate with one another regarding the proceeding[.]
RCW 34.05.455(1)(a).
[20] (1) Issues not raised before the agency may not be raised on appeal, except to the extent that:

(a) The person did not know and was under no duty to discover or could not have reasonably discovered facts giving rise to the issue;
(b) The agency action subject to judicial review is a rule and the person has not been a party in adjudicative proceedings that provided an adequate opportunity to raise the issue;
(c) The agency action subject to judicial review is an order and the person was not notified of the adjudicative proceeding in substantial compliance with this chapter; or
(d) The interests of justice would be served by resolution of an issue arising from:
(i) A change in controlling law occurring after the agency action; or
(ii) Agency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency.
(2) The court shall remand to the agency for determination any issue that is properly raised pursuant to subsection (1) of this section.
RCW 34.05.554.
[21] Reply Brief of Appellant at 12-13.
[22] See Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration."); RAP 10.3(c).
[23] Haley v. Medical Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991) (citing Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322(1926)).
[24] Id. at 739-40, 818 P.2d 1062.
[25] Id. at 740, 818 P.2d 1062.
[26] Id. 741, 818 P.2d 1062.
[27] Id.
[28] Nguyen v. Dep't of Health, 144 Wash.2d 516, 536, 29 P.3d 689 (2001).
[29] Madison v. State, 161 Wash.2d 85, 92, 163 P.3d 757 (2007).
[30] WAC 246-817-310.
[31] 117 Wash.2d 720, 818 P.2d 1062 (1991).
[32] 127 Wash.2d 595, 903 P.2d 433 (1995).
[33] Heinmiller, 127 Wash.2d at 604, 903 P.2d 433 (citing Haley, 117 Wash.2d at 742, 818 P.2d 1062).
[34] Id. at 605, 903 P.2d 433 (quoting Haley, 117 Wash.2d at 743, 818 P.2d 1062).
[35] Id. (citing Haley, 117 Wash.2d at 743, 818 P.2d 1062; RCW 18.130.010).
[36] Haley, 117 Wash.2d at 743, 818 P.2d 1062; see also Heinmiller, 127 Wash.2d at 604-05, 903 P.2d 433.
[37] Haley, 117 Wash.2d at 740, 818 P.2d 1062.