162 P.3d 389 (2007)
STATE of Washington, Respondent,
v.
Scott CHAMBERLIN, Appellant.
No. 79712-9.
Supreme Court of Washington, En Banc.
Argued May 15, 2007.
Decided July 19, 2007.
*391 Eric Broman, Nielsen Broman & Koch PLLC, Seattle, for Appellant.
Gregory Marshall Banks, Island County Prosecutor's Office, Coupeville, for Respondent.
Lila Jane Silverstein, Washington Appellate Project, Sarah A. Dunne, ACLU, Nancy Lynn Talner, Seattle, Amicus Curiae-American Civil Liberties.
Lila Jane Silverstein, Washington Appellate Project, Amicus Curiae-Washington Association of Criminal Defense Lawyers.
Pamela Beth Loginsky, Wash. Association of Prosecuting Attorneys, Olympia, Amicus Curiae-Washington Association of Prosecuting Attorneys.
C. JOHNSON, J.
¶ 1 This case involves direct review of a judge's denial of a motion to suppress evidence obtained from the execution of a search warrant authorized by the same judge. Scott Chamberlin appeals the judge's denial of a motion to have the suppression motion heard by a different judge than the judge who issued the warrant. Chamberlin also challenges the veracity of the informant and whether probable cause existed to issue the search warrant. We accepted review and affirm.

FACTS
¶ 2 Randall Paxton, the informant, was arrested for driving while under the influence, attempting to elude a pursuing police vehicle, and reckless driving. Clerk's Papers (CP) at 15. Paxton told the arresting officer he was under the influence of methamphetamine and marijuana. He stated that he got the drugs from Chamberlin and offered to provide a statement and testify against Chamberlin. Police told him that they would not make any deal regarding his criminal charges. CP at 38-39. Nonetheless, Paxton gave a tape-recorded statement in which he described the transaction with Chamberlin. CP at 37-43. Based primarily on that statement, the Island County sheriff's office presented an affidavit for a search warrant to Judge Hancock.
¶ 3 The affidavit for the search warrant identified Paxton by name and relayed Paxton's claim that he purchased the drugs at Chamberlin's home, Chamberlin's address, and Paxton's description of the home's location. CP at 60-62. The affidavit described how Chamberlin retrieved the methamphetamine from a black duffel bag on a coffee table. Inside the duffel bag was a plastic "ziplock" bag containing roughly three to four ounces of methamphetamine. Paxton said that Chamberlin weighed out 1.75 grams of methamphetamine on a digital scale and Paxton paid $45 for it. The affidavit relayed Paxton's statement that he left the home and injected the methamphetamine. Paxton said he returned that day and was given marijuana from the same black bag from which Chamberlin had retrieved the methamphetamine. Paxton believed there was at least three-quarters of an ounce of marijuana in the duffel bag. He indicated he had been buying drugs from Chamberlin for around four months and that each time the drugs were kept either in the black duffel bag or a black metal lockbox. The affidavit contains the averment that Paxton was not threatened with or promised anything in regard to his pending charges. The affiant averred, "Paxton states that he had been doing well until CHAMBERLAIN [sic] provided him with methamphetamine approximately 4 months ago." CP at 62.[1]
¶ 4 Judge Hancock issued a search warrant for Chamberlin's home. CP at 47. *392 Based largely on evidence uncovered in that search, Chamberlin was charged with one count of possession with intent to manufacture or deliver marijuana. He was also charged with possession with intent to manufacture or deliver methamphetamine.
¶ 5 At a readiness hearing, defense counsel expressed concern about whether Judge Hancock could be impartial in hearing the suppression motion. Judge Hancock then said: "If, indeed, I issued the warrant in this case, I'm sure that I did read carefully the application for the warrant, sworn testimony in support of the warrant, issued the warrant." Report of Proceedings (RP) 1 RP at 5.[2] Judge Hancock indicated he did not remember issuing the warrant. He then said, "[I] also believe I would be capable of fairly and impartially hearing any motion to suppress despite the fact that I issued the warrant." 1 RP at 5. Concluding, he said he would review the warrant for issues he might have missed and, if wrong, suppress the evidence.
¶ 6 At a suppression hearing the defense asked Judge Hancock to recuse himself. 2RP at 2-5. Chamberlin said he did not want to use his statutory right to file an affidavit of prejudice. 2RP at 5-6. Judge Hancock denied the request. He stated that he did not know why he would not be fair and impartial. 3RP at 19.
¶ 7 Judge Hancock denied the suppression motion. 3RP at 40-48. He determined that the affidavit established Paxton's basis of knowledge. Judge Hancock also determined Paxton had the requisite veracity, finding he was a named citizen informant, he had given a statement against penal interest, and he gave a detailed description that established Paxton's credibility. After a bench trial, Chamberlin was found guilty of count II, possession of methamphetamine with intent to deliver in violation of RCW 69.50.401(2)(b), not guilty of count I, and sentenced to a standard range sentence of 16 months. CP at 3, 8.

ANALYSIS
¶ 8 Chamberlin argues Judge Hancock should have recused himself, citing actual bias and the appearance of fairness, and asks that the conviction be reversed and the case remanded for a suppression hearing before a different judge. Br. of Appellant at 6-14.[3] The State argues that there is no evidence of actual bias and that the weight of legal authority supports the view that this scenario does not violate due process, the appearance of fairness doctrine, or the principles underlying the Washington Code of Judicial Conduct (CJC), Canon 3(D)(1). Br. of Resp't at 4-8.
¶ 9 Turning first to the appearance of fairness, Chamberlin argues that recusal was required based on the appearance of fairness doctrine and CJC Canon 3(D)(1). Evidence of a judge's actual or potential bias must be shown before an appearance of fairness claim will succeed. State v. Post, 118 Wash.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992). Under the CJC, which is designed to provide guidance to judges and candidates for judicial office, "[j]udges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned. . . ." *393 CJC Canon 3(D)(1). See also State v. Dominguez, 81 Wash.App. 325, 328, 914 P.2d 141 (1996) (judge must disqualify self if "his impartiality may reasonably be questioned").[4]
¶ 10 Chamberlin argues that potential bias is inherent in the scenario here, relying on three cases: Brent v. State, 929 So.2d 952 (Miss.Ct.App.2005), cert. denied, 929 So.2d 923 (Miss.2006); Russell v. Lane, 890 F.2d 947 (7th Cir.1989); Rice v. McKenzie, 581 F.2d 1114 (4th Cir.1978). Both Russell and Rice involve instances where the judge essentially sat on the appeal of his own case. This practice is clearly banned by federal law and practice. "[I]t is considered improper  indeed is an express ground for recusal, see 28 U.S.C. § 47  in modern American law for a judge to sit on the appeal from his own case." Russell, 890 F.2d at 948 (citing Rice). While Brent involved a judge issuing the search warrant and denying a suppression motion. Important to the result was that the same judge, then acting as an assistant district attorney, had previously prosecuted Brent. Brent, 929 So.2d at 955. None of these cases support Chamberlin's argument under the facts of this case.
¶ 11 Amicus ACLU argues that participation in the investigatory process violates due process. Br. of Amicus ACLU at 11. ACLU argues that a judge who issues a warrant cannot be wholly disinterested in the suppression or admission of the evidence thereby obtained. Both Chamberlin and the ACLU, in essence, are advocating for a rule of automatic recusal of any judge from hearing a challenge to a search warrant he or she issues.
¶ 12 The right to a fair hearing under the federal due process clause prohibits actual bias and "`the probability of unfairness.'" Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). In certain instances the duty to recuse is nondiscretionary because the "probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Withrow, 421 U.S. at 47, 95 S.Ct. 1456. These instances include where the adjudicator has a pecuniary interest in the outcome or where the judge has been the target of personal abuse or criticism from the party before him. An assertion of an unconstitutional risk of bias must overcome a presumption of honesty and integrity accruing to judges. See Withrow, 421 U.S. at 47, 95 S.Ct. 1456; see also Jones v. Halvorson-Berg, 69 Wash.App. 117, 127, 847 P.2d 945 (1993) (presumption judges perform functions regularly and properly and without bias or prejudice).
¶ 13 The ACLU cites Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 in support of its argument that due process was violated here. In Murchison, the judge conducted secret grand jury proceedings, acting both as investigator, sole juror, and charging authority. The judge in Murchison interrogated two policemen. Based on the "secret hearings," the judge charged Murchison with perjury and the second police officer with contempt. The same judge then tried, convicted, and sentenced the police officers. The ACLU argues that, like the judge in Murchison, Judge Hancock acted as part of the investigatory process by reviewing evidence in an ex parte proceeding at which the defendant was not present, did not present evidence, and was not represented by counsel.
¶ 14 This analogy to Murchison fails in several regards. The judge in Murchison became "part of the prosecution and assumed an adversary position." Withrow, 421 U.S. at 53, 95 S.Ct. 1456. The judge used language suggesting he considered himself to be *394 part of the prosecution. Murchison, 349 U.S. at 137 n. 8, 75 S.Ct. 623. As a single "`judge-grand jury,'" the judge was "even more a part of the accusatory process than an ordinary lay grand juror." Murchison, 349 U.S. at 137, 75 S.Ct. 623. The judge compelled the witnesses to testify before him. The United States Supreme Court reasoned that what the judge learned in his secret sessions was "likely to weigh far more heavily with him than any testimony given" in subsequent open hearings. Murchison, 349 U.S. at 138, 75 S.Ct. 623. In explaining his guilty finding the judge "called on his own personal knowledge and impression of what had occurred in the grand jury room" an impression that "could not be tested by adequate cross-examination." Murchison, 349 U.S. at 138, 75 S.Ct. 623. Under these circumstances, the United States Supreme Court reversed the convictions.
¶ 15 Unlike the judge's role in Murchison, the probable cause inquiry does not draw judges into an adversarial position. In issuing search warrants, a judge reviews an affidavit prepared outside his or her presence. Judges do not evaluate the veracity of witnesses personally but instead determine only if the affidavit establishes probable cause for the issuance of the warrant. The availability of cross-examination in subsequent adversarial proceedings (i.e., during the suppression hearing) provides a new opportunity to evaluate the evidence and test any lingering impressions. Judges in criminal matters routinely must evaluate the existence of probable cause or oversee preliminary hearings. "Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence." Withrow, 421 U.S. at 56, 95 S.Ct. 1456. The weight of legal authority supports the position that no inherent prejudice or bias arises from this scenario. See, e.g., Hirning v. Dooley, 679 N.W.2d 771, 780 (S.D.2004); Trussell v. State, 67 Md.App. 23, 506 A.2d 255 (1986). We conclude there is no basis for an automatic recusal rule.
¶ 16 Chamberlin argues that Judge Hancock displayed actual bias when he stated that he was sure he had read carefully the application for the warrant and the sworn testimony in support of the warrant. 1 RP at 4-5. In its proper context, the statement does not show bias. Judge Hancock said that he did not remember issuing the warrant. But, assuming he did, "[I] also believe I would be capable of fairly and impartially hearing any motion to suppress despite the fact that I issued the warrant." 1 RP at 5. He said he would review the warrant for issues he might have missed and, if wrong, suppress the evidence. In context, the statement has a different meaning. Judge Hancock was explaining that he believed he could, and would, compartmentalize the proceedings and be unbiased. We find no actual bias under these facts.
¶ 17 Even where actual bias is not apparent, a party is not without protection against prejudice or error. Independent appellate review reduces the risk of error. Appellate courts review de novo the legal conclusion of law whether probable cause is established. In re Det. of Petersen, 145 Wash.2d 789, 799, 42 P.3d 952 (2002). In determining whether probable cause is established, the appellate courts review the same evidence presented below. What this means is where the probable cause finding was error, appellate review cures the error.[5]
¶ 18 Other protections against prejudice are available to parties. RCW 4.12.050 permits a party to change judges once as a matter of right, upon a timely motion, without substantiating the claim of prejudice. This means that a party or attorney can replace the assigned judge without demonstrating why a fair and impartial trial is impossible before that judge. In addition, the judge's honesty and integrity serves as a bulwark against prejudice: under CJC Canon 3(D)(1), judges should disqualify themselves *395 in a proceeding in which their impartiality might reasonably be questioned. In short, independent appellate review, the right to file an affidavit of prejudice, and the Code of Judicial Conduct advance the parties' right to a fair and disinterested judiciary and reduce the risk of prejudice.
¶ 19 Turning to the next issue, Chamberlin challenges the sufficiency of the affidavit in support of the search and whether the veracity prong of the Aguilar-Spinelli[6] test was satisfied. A search warrant may issue only on a determination of probable cause. Affidavits for search warrants are tested in a commonsense, non-hyper technical manner. When a search warrant is based on an informant's tip the constitutional criteria for determining probable cause is measured by the two-pronged Aguilar-Spinelli test. The second prong seeks to evaluate the truthfulness of the informant. It may be satisfied if the credibility of the informant is established. Or, even if nothing is known about the informant, the facts and circumstances under which the information was furnished may reasonably support an inference that the informant is telling the truth. State v. Lair, 95 Wash.2d 706, 709-12, 630 P.2d 427 (1981).
¶ 20 The trial court found that "Mr. Paxton is a named citizen informant not a paid or professional informant. As such he is presumed to be a reliable informant." CP at 16 (citing State v. Wible, 113 Wash.App. 18, 51 P.3d 830 (2002)). The trial court also noted that Paxton made statements against his penal interest, and he provided very detailed information about the drug buys in question. CP at 17.
¶ 21 We agree that Paxton was reliable. Paxton made a statement against his penal interest when he admitted to driving under the influence of narcotics. An admission against penal interest is "one factor," "[p]articularly where [it] is not the only indication of reliability." Lair, 95 Wash.2d at 711, 630 P.2d 427. Paxton's statement against penal interest is buttressed by his willingness to publicly stand by his information. Paxton's identity was revealed in the affidavit; he was not a confidential informant. Paxton was willing to repeat his statement in court and provided a tape recorded statement. Cf. Lair, 95 Wash.2d at 711, 630 P.2d 427 ("`stoolie'" may perceive that he can admit to criminality without significant risk) (quoting 1 Wayne R. LaFave, SEARCH AND SEIZURE § 3.3., at 530 (1978)). The police made no promises in exchange for Paxton's statement.[7]
¶ 22 This particular set of considerations need not be met in every case, but in this case these factors are sufficient. We affirm the trial court's finding of probable cause to issue the warrant.

CONCLUSION
¶ 23 We affirm the trial court's decision not to recuse and it's finding that the warrant was supported by probable cause. We reject any error premised on the delay in entering written findings of fact and conclusions of law.[8]
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, TOM CHAMBERS, SUSAN OWENS, BARBARA *396 A. MADSEN, MARY E. FAIRHURST, RICHARD B. SANDERS, JAMES M. JOHNSON, BOBBE J. BRIDGE, Justices.
NOTES
[1] This statement is not reflected in Paxton's statement to the police and Chamberlin did not challenge its verity on appeal.
[2] We refer to the report of proceedings volumes based on the date of the proceeding. 1RP (Apr. 15, 2005); 2RP (May 23, 2005); 3RP (Aug. 3, 2005); 4RP (Oct. 7, 2005).
[3] The American Civil Liberties Union and Washington Association of Criminal Defense Lawyers (hereafter ACLU) filed an amicus brief supporting and augmenting Chamberlin's arguments. ACLU argues that the principles underlying Washington's exclusionary rule and article 1, section 7 of the Washington Constitution support a "[r]obust suppression motion procedure." Br. of Amicus ACLU at 7. The parties did not raise or brief this issue, and we decline to reach it here. In addition to supporting Chamberlin's arguments, ACLU argues that a violation of due process occurs when the same judge who issued the warrant presides over a suppression hearing contesting the legality of the warrant. Br. of Amicus ACLU at 10-15. Chamberlin does not clearly ground his assignment of error on a violation of the Washington State or federal constitutions. He states in passing that criminal defendants have a right to due process of law under both constitutions and that "[a]n unbiased judge and the appearance of fairness are hallmarks of due process." Br. of Appellant at 6. Still, we reach this argument.

Neither Chamberlin nor the ACLU makes independent arguments based on the state constitution.
[4] Outside of scenarios involving a clear and nondiscretionary duty to recuse, the decision "will necessarily involve the exercise of discretion." State v. Carlson, 66 Wash.App. 909, 918, 833 P.2d 463 (1992) (describing former CJC, Canon 3(C)(1)), rev. denied 120 Wash.2d 1022, 844 P.2d 1017 (1993).

Judges have recused themselves where the judge had already rendered a contempt decision against the defendants and, in a prior capacity, prosecuted them, United States v. Zerilli, 328 F.Supp. 706 (C.D.Cal.1971), or where there was the appearance of ex parte contact. United States v. Quattrone, 149 F.Supp. 240, 243 (D.D.C. 1957); Sherman v. State, 128 Wash.2d 164, 905 P.2d 355 (1995).
[5] This standard of review is also appropriate because it is through the application of the legal rules for probable cause that the rules "acquire content." Ornelas v. United States, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Appellate review under this standard ensures that appellate courts remain the expositors of law and ensures the unity of precedent.
[6] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[7] This is consistent with our analysis in State v. Chenoweth, 160 Wash.2d 454, 158 P.3d 595 (2007). There we said that "[a]n informant's willingness to come forward and identify himself is a strong indicator of reliability." 160 Wash.2d at 483, 158 P.3d 595. We explained that the ability to hold the informant accountable for false accusations supported the informant's veracity. We also noted the informant's statements against his penal interest.
[8] Chamberlin also assigned error to the judge's failure to enter written findings of fact and conclusions of law to support the finding of guilt on count II: possession with intent to deliver methamphetamine. After appellate counsel filed its brief, the State provided the trial court with proposed findings of fact and conclusions of law. The trial court then entered findings of fact and conclusions of law. CP at 79-82. Chamberlin has made no showing that he was prejudiced, that effective appellate review is impossible, or that the State tailored the findings to the issues raised on appeal. See State v. Head, 136 Wash.2d 619, 624-25, 964 P.2d 1187 (1998). We find no error.