# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ALLYAH JASEM SALIM AYESH, | No.  47794-7-II |
| Respondent, | |
| v. | |
| JONATHAN MICHAEL BULLIS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Jonathan Bullis appeals the superior court's orders denying his motions for revision and reconsideration of a renewed protection order entered against him.  Bullis argues that the superior court abused its discretion and violated his fair hearing right.  Because the superior court neither abused its discretion nor violated Bullis's fair hearing right, we affirm.

FACTS

I.  PROTECTION ORDER

In February 2014, Allyah Ayesh obtained a one-year protection order against Bullis.  The superior court commissioner found that Bullis had perpetrated domestic violence against Ayesh and presented a threat to her physical safety.  The protection order required Bullis to "participate in treatment and counseling," defined as a "domestic violence perpetrator treatment program approved under RCW 26.50.150 *or* counseling [at a] **State certified provider that provides current WAC compliant treatment**."  Clerk's Papers (CP) at 57 (emphasis added).  The

protection order additionally required that "**[e]valuations . . . be [completed] within 30 days and include releases of information to permit the Provider to contact [Ayesh]**." CP at 57. The protection order barred Bullis from contacting Ayesh or coming within 500 feet of her home or workplace.[1]

## II. TREATMENT EVALUATION

In March 2014, Bullis was evaluated by the "Social Treatment Opportunity Programs" (STOP).[2] CP at 63. A domestic violence treatment professional assessed Bullis and found that "[p]ower and control issues germane to the etiology of domestic violence were not apparent." CP at 65. STOP recommended that instead of enrolling in its domestic violence treatment program, Bullis "continu[e] with his Mental Health counseling and . . . taking his medication as recommended by his physician."[3] CP at 65. Bullis did not enroll in STOP following this assessment.

## III. RENEWAL MOTION

In February 2015, Ayesh petitioned to renew the protection order for another year. In her petition, Ayesh stated that she was "still in fear of [Bullis] due to his violent actions." CP at 4. Ayesh testified at the renewal hearing that she continued to live in fear of Bullis and that no

---

[1] Bullis unsuccessfully appealed the protection order to this court, arguing that the evidence was insufficient to support the order's issuance. *Ayesh v. Bullis*, noted at 188 Wn. App. 1022 (2015).

[2] STOP is a domestic violence treatment program that claims to provide chapter 388.60 WAC-compliant treatment.

[3] Nothing in the record indicates that Bullis otherwise participated in counseling or taking prescribed medication. In fact, Bullis conceded at the renewal hearing that he had not done "any" treatment.

provider had contacted her, despite the protection order's release of information requirement. Bullis opposed renewal. He claimed that his submission to the STOP evaluation constituted compliance with the protection order and that he had avoided all contact with Ayesh, although he admitted that he had not done any treatment. Bullis claimed that Ayesh's fear of him was unreasonable because he had not contacted her or violated the protection order.

The superior court commissioner concluded that Bullis had not complied with the protection order because he had not participated in domestic violence treatment. The superior court commissioner granted an order that renewed the protection order until February 2016.

IV. REVISION MOTION

In March 2015, Bullis moved to revise the renewal order; he restated his renewal hearing arguments. Bullis submitted STOP's evaluation, which stated that STOP did not recommend domestic violence counseling, and his own declaration, which stated that he had had no contact with Ayesh since the original order's entry and that he never wanted to have any contact with Ayesh again. Bullis claimed that he had signed a release of information at the evaluation that permitted STOP to contact Ayesh.

In May 2015, the superior court held a revision hearing. The superior court reviewed the renewal hearing transcript, including Ayesh's prior testimony that she was still in fear of Bullis's acts of violence against her and that no provider had contacted her. Bullis told the superior court that he had been "rejected" from STOP and that he "wasn't required to attend anything for the program." Report of Proceedings (RP) (May 8, 2015) at 6. The superior court stated that Bullis "hasn't done the treatment that was ordered." RP (May 8, 2015) at 8. The superior court "appreciat[ed] . . . that [Bullis's] real position" was that he had never committed an act of domestic

3

violence. RP (May 8, 2015) at 9. The superior court commented also that it "recognize[d] STOP might be different, and perhaps that's why [Bullis] went to STOP, because he thought he could get an assessment that didn't require treatment." RP (May 8, 2015) at 8. Although Bullis claimed to have signed releases of information that permitted STOP to contact Ayesh, the superior court noted that no provider had contacted Ayesh. The superior court denied Bullis's revision motion.

On May 11, 2015, Bullis requested transcripts of the revision hearing from the court reporter. On Friday, May 15, 2015, the court clerk e-mailed Bullis that the superior court judge had not yet approved the transcripts or returned them to the clerk. By Monday, May 18, 2015, the deadline for filing his reconsideration motion, Bullis had not received the transcripts.

## V. RECONSIDERATION MOTION

On May 18, 2015, Bullis moved for reconsideration of the denial of his revision motion. He argued that STOP's recommendation that he not enroll in treatment satisfied the protection order's counseling requirement and that he had signed releases at STOP. Bullis contended that his revision hearing had not been fair because the judge's comment that Bullis may have gone to STOP to avoid treatment implied that he was "'gaming'" the system. CP at 107. And Bullis claimed that the superior court clerk's failure to provide the revision hearing transcript before the reconsideration motion's filing deadline had prejudiced his reconsideration motion. The superior court denied the reconsideration motion.

Bullis appeals the denial of his revision and reconsideration motions.

## ANALYSIS

### I. REVISION ORDER

Bullis argues that the superior court both abused its discretion and deprived him of a fair hearing when it denied his revision motion. His abuse of discretion arguments are that the superior court wrongly determined that Bullis had not complied with the protection order, Ayesh did not establish the factors required to renew a protection order, and Bullis had proven by a preponderance of the evidence that he was not likely to reoffend. His fair hearing argument is that the superior court evinced bias against him in a comment. Bullis's arguments fail.

### A. ABUSE OF DISCRETION

Bullis contends that the superior court abused its discretion in two ways when it denied his revision motion. First, Bullis argues that the superior court abused its discretion when it concluded that he had not complied with the protection order's treatment or counseling requirement because he had not undergone counseling at a chapter 388.60 WAC-compliant provider. Related to compliance, Bullis argues both that the superior court should have concluded that "no treatment is still treatment" and that the superior court did not have the authority to conclude that Bullis had not complied with the protection order after STOP had found Bullis did not need counseling. Br. of Appellant at 9-10. Second, Bullis argues that the superior court abused its discretion because there were no tenable grounds to renew the protection order. We hold that the superior court did not abuse its discretion when it denied Bullis's revision motion.

### 1. STANDARD OF REVIEW

We review the superior court's decision to renew a protection order for abuse of discretion: we reverse the decision if it is manifestly unreasonable or exercised on untenable grounds. *Barber*

5

*v. Barber*, 136 Wn. App. 512, 516, 150 P.3d 124 (2007); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). We review questions of law de novo. *Knight v. Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

2.      PROTECTION ORDER NONCOMPLIANCE AND AUTHORITY TO ORDER COUNSELING

Bullis argues that his "timely submi[ssion] to a domestic violence perpetrator treatment program evaluation" constituted compliance with the protection order. Br. of Appellant at 13. He contends that the superior court abused its discretion when it denied his revision motion because during the hearing, the superior court stated that Bullis did not comply with the order. Specifically, Bullis claims that the superior court improperly "substitute[d] its opinion regarding domestic violence perpetrator treatment for that of a State-certified domestic violence perpetrator treatment provider." Br. of Appellant at 14. We disagree.

     a.      LEGAL PRINCIPLES

"Upon notice and after hearing," a superior court may enter a protection order that forbids further contact between the parties, requires the restrained party "to participate in a domestic violence perpetrator treatment program approved under RCW 26.50.150," or imposes "other relief as [the superior court] deems necessary for the protection of the petitioner." RCW 26.50.060(1), (e), (f), (h). If the petitioner timely moves to renew the order, the superior court "shall grant" the renewal "unless the [restrained party] proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence against the petitioner . . . when the order expires." RCW 26.50.060(3).

Chapter 26.50 RCW governs domestic violence perpetrator programs; it requires the Department of Social and Health Services to adopt standards to approve these programs, which

are found in chapter 388-60 WAC. RCW 26.50.150. The WAC standards define a "participant" in a program as "the client enrolled in the . . . program." WAC 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. A domestic violence perpetrator treatment program must focus on holding participants accountable for "abuse that occurred" and changing participants' "violent and abusive behaviors." WAC 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(2). For instance, a program must require participants to attend weekly group therapy, sign releases of information, and contract for services with the treatment program. WAC 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.

     b.     AUTHORITY OF THE SUPERIOR COURT

Bullis attacks the superior court's authority to require him to attend counseling.[4] He claims that the superior court erred because it "elected to substitute its opinion regarding domestic violence perpetrator treatment for that of a State-certified domestic violence perpetrator treatment provider." Br. of Appellant at 14. We disagree.

The superior court's authority to order counseling is a question of law we review de novo. *See Knight*, 178 Wn. App. at 937. When the superior court grants a protection order, it has the authority to order "particip[ation]" in a RCW 26.50.150-compliant treatment program for domestic violence perpetrators and "other relief [the superior court] deems necessary." RCW 26.50.060(1)(e), (f).

WAC 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 defines a "participant" as one who "*enroll[s]* in [a] domestic violence perpetrator treatment program." (Emphasis added.) Only by enrolling in the program could Bullis "participate" in treatment as the protection order required. *See* WAC 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, -0075. Thus, "participation" in counseling requires actually *enrolling* in counseling. *See* WAC 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.

---

[4] Insofar as Bullis attacks the legislative policy behind RCW 26.50.060, that argument is not appropriately before us.

The superior court acted within its authority when it required Bullis to enroll in counseling regardless of STOP's opinion that Bullis did not need to enroll in STOP's program.

        c.       COMPLIANCE WITH "TREATMENT OR COUNSELING" REQUIREMENT

Bullis's argument is essentially that the decision of STOP, a chapter 388.60 WAC-compliant counseling program, not to enroll him in treatment is nevertheless "treatment."

The protection order required Bullis to "participate in treatment and counseling," defined as a "domestic violence perpetrator treatment program approved under RCW 26.50.150 *or* counseling [at a] **State certified provider that provides *current WAC compliant treatment***." CP at 57 (emphasis added). As discussed above, one participates in treatment only when one enrolls in a domestic violence perpetrator treatment program. WAC 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. But Bullis conceded at both the renewal and the revision hearing that he never enrolled in State-certified counseling or domestic violence treatment program.

The superior court properly determined that Bullis had not participated in the ordered treatment.[5] Accordingly, the superior court did not abuse its discretion when it concluded that Bullis had not complied with the protection order.

We conclude that the superior court had the authority to order Bullis to enroll in counseling and that the superior court properly denied Bullis's revision motion on the basis of Bullis's lack of compliance.

---

[5] And although STOP did recommend that Bullis "continue[ ] with his Mental Health counseling and . . . taking his medication as recommended by his physician," the record indicates that Bullis did not comply with that recommendation. CP at 65.

8

3.      THE SUPERIOR COURT HAD TENABLE GROUNDS TO DENY REVISION

Bullis addresses the statutory grounds that require a court to renew a protection order. He argues that the superior court abused its discretion when it denied his revision motion because Ayesh's fear of Bullis was not reasonable. Bullis further argues that he proved by a preponderance of the evidence that he would not resume acts of domestic violence because he had had no contact with Ayesh. We disagree.

Under RCW 26.50.060(3), renewal of a protection order is mandatory upon the petitioner's motion unless the respondent "proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence against the petitioner." We have previously held that the petitioner must show past abuse and present fear. *Barber*, 136 Wn. App. at 516. The statute does not, however, require new or recent acts of domestic violence or contact if the present fear of violence is reasonable. *In re Marriage of Freeman*, 169 Wn.2d 664, 675, 239 P.3d 557 (2010).

Because Ayesh presented evidence of past abuse and present fear and because Bullis failed to prove by a preponderance of the evidence that he would not resume acts of violence against Ayesh, we hold that the superior court did not abuse its discretion when it denied Bullis's revision motion. The superior court had tenable grounds upon which to deny the revision motion.

a.      REASONABLE PRESENT FEAR OF VIOLENCE

Bullis argues that Ayesh's claimed fear of him was unreasonable because he and Ayesh no longer interacted and because he had complied with the terms of the order.[6] We disagree.

---

[6] In his reply, Bullis argues for the first time that Ayesh's fear of him is unreasonable because he now lives in Michigan. We do not consider Bullis's argument because evidence that Bullis had relocated was not before the superior court and because the record contains no such evidence.

Under *Freeman*, to "renew . . . a protection order, the victim does not need to prove a new act of domestic violence *if the present likelihood of a recurrence is reasonable*." 169 Wn.2d at 674-75. The *Freeman* court held that the likelihood of a recurrence was unreasonable given the restrained party's "10-year compliance" with the protection order and his avoidance of any contact with the petitioner. 169 Wn.2d at 675.

At the revision hearing, the superior court considered evidence that Ayesh still feared Bullis because of his past violence against her. Here, unlike *Freeman*, merely a year had elapsed and despite the protection order's release requirement, no treatment provider or counseling program had contacted Ayesh. Because Bullis had apparently not received any domestic violence counseling or treatment, Ayesh's fear of Bullis was reasonable. The superior court did not abuse its discretion in determining that Ayesh presently and reasonably feared Bullis.

b.    LIKELIHOOD OF RESUMING DOMESTIC VIOLENCE

Bullis claims that he met his burden to show that he would not resume acts of domestic violence when he showed that he had no contact with Ayesh since the original order and because he never wanted to contact Ayesh again. Bullis also maintains that he complied with the protection order's counseling or treatment requirement. We disagree.

The superior court was required to renew the protection order upon Ayesh's showing of fear unless Bullis proved by a preponderance of the evidence that he would not resume acts of domestic violence against Ayesh. RCW 26.50.060(3). Here, Bullis's uncontroverted failure to enroll in domestic violence treatment or counseling, despite the protection order's requirement to do so, and his failure to accept responsibility, were reasonable bases upon which the superior court

10

could conclude that Bullis had failed to prove by a preponderance of the evidence that he would not resume acts of domestic violence against Ayesh.

Thus, there were tenable grounds for the superior court to determine that Bullis had not met his burden of proving that he was unlikely to continue to perpetrate domestic violence against Ayesh. We hold that the superior court did not abuse its discretion when it denied Bullis's revision motion.

## B. FAIR HEARING

Bullis argues that the superior court violated the appearance of fairness doctrine and denied him a fair hearing when the superior court made an improper comment at the revision hearing. We conclude that the superior court's comment did not violate the appearance of fairness doctrine or deny Bullis a fair hearing.

An alleged violation of the appearance of fairness doctrine is a legal issue we review de novo. *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 899, 232 P.3d 1095 (2010). A trial court is presumed to act without bias or prejudice. *King*, 168 Wn.2d at 904 (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004)). A claimed violation of the appearance of fairness doctrine requires evidence of a judge's actual or potential bias. *State v. Gamble*, 168 Wn.2d 161, 187-88, 225 P.3d 973 (2010) (quoting *State v. Chamberlin*, 161 Wn.2d 30, 37, 162 P.3d 389 (2007)). The test for bias is whether "a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *Gamble*, 168 Wn.2d at 187.

Bullis argues that the superior court's comment that perhaps Bullis went to STOP because "'he thought he could get an assessment that didn't require treatment'" was "highly prejudicial in

general and . . . exceedingly offensive" because it implied he sought to "'gam[e]' the system" and "impugn[ed] his integrity." Reply Br. of Appellant at 20. But Bullis's arguments fail to amount to bias under the reasonable observer test. As discussed above, the superior court's determination of whether to renew the protection order required it to look at all the evidence before it. Given all the evidence, including the fact that Bullis was in noncompliance with the protection order, a reasonable, disinterested observer would conclude that parties received a fair, impartial, and neutral hearing.

We hold that the record shows that the superior court did not evince bias. Thus, the superior court did not violate the appearance of fairness doctrine or Bullis's right to a fair hearing.

## II. RECONSIDERATION ORDER

Bullis challenges the superior court's order denying reconsideration. First, he argues that the superior court abused its discretion when it denied his reconsideration motion because the court had abused its discretion when it denied his revision motion. Second, he argues that the superior court violated his right to a fair hearing and violated the appearance of fairness doctrine when it withheld the revision hearing transcript. We conclude these arguments fail.

### A. ABUSE OF DISCRETION

Bullis argues that the superior court abused its discretion when it denied his reconsideration motion. Bullis makes the same argument that he made regarding the denial of his revision motion: the superior court wrongly determined that Bullis did not comply with the protection order at the revision hearing. Thus, Bullis concludes that it was an abuse of discretion for the superior court to deny his reconsideration motion, just as it was an abuse of discretion for the court to deny his revision motion. We affirm the denial of Bullis's reconsideration motion.

We review a trial court's denial of reconsideration for abuse of discretion. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). Bullis moved for reconsideration under CR 59(a).[7] For the reasons addressed above in the revision section, Bullis's argument that he had complied with the treatment requirement fails. Thus, the superior court did not abuse its discretion when it denied Bullis's reconsideration motion.

### B. FAIR HEARING AND APPEARANCE OF FAIRNESS

Bullis argues that the superior court denied him his due process right to a fair hearing and violated the appearance of fairness doctrine when it withheld the revision hearing transcript until after the deadline for his reconsideration motion. We disagree.

We review claimed violations of the due process right to a fair hearing and the appearance of fairness doctrine de novo. *In re Welfare of J.M.*, 130 Wn. App. 912, 920, 125 P.3d 245 (2005); *King*, 168 Wn.2d at 899. The right to a fair hearing prohibits both actual bias and the probability of unfairness. *Chamberlin*, 161 Wn.2d at 38 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)).

---

[7] Bullis's reconsideration motion argued that the superior court had erroneously determined that he had not complied with the order and prejudicially implied that Bullis was "'gaming'" the system. CP at 107. Bullis claimed "[i]rregularity in the proceedings of the court . . . or abuse of discretion, by which such party was prevented from having a fair trial" (CR 59(a)(1)), "[e]rror in law occurring at the trial and objected to at the time by the party making the application" (CR 59(a)(8)), and "[t]hat substantial justice ha[d] not been done" (CR 59(a)(9)). CP at 100.

Even if Bullis had addressed the three subsections of CR 59(a) on appeal, his arguments would fail. As discussed, the superior court properly determined that Bullis had not complied with the protection order and the superior court was not biased against Bullis at the revision hearing. Thus, Bullis could not succeed even if he argued that the superior court abused its discretion when it did not find an irregularity in the proceedings, an error in law, or that Bullis had been deprived of substantial justice.

When reviewing an alleged violation of the appearance of fairness challenge, we presume a trial court acted without bias. *King*, 168 Wn.2d at 904 (quoting *Davis*, 152 Wn.2d at 692). The party who claims there has been an appearance of fairness doctrine violation must provide evidence of actual or potential bias. *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992). Evidence of a judge's actual or potential bias invalidates the result of a hearing when a reasonable observer would conclude from the evidence that the party could not have received a fair, impartial, and neutral hearing and that the trial court was prejudiced against the party. *See Gamble*, 168 Wn.2d at 187-88. "[J]udicial bias" is an "inclination or tendency; prejudice; [or] predilection" against a party to a case. BLACK'S LAW DICTIONARY 192 (10th ed. 2014).

Bullis claims that he has presented evidence of bias by showing that the superior court "inexplicabl[y] with[held]" the revision hearing transcript. Reply Br. of Appellant at 23. He relies on the court clerk's statement that the superior court judge had not yet approved the transcript for release by the business day before his reconsideration motion deadline. Without the transcript, Bullis claims that he could not obtain a declaration from STOP explaining why STOP did not contact Ayesh.

Bullis does not explain why he could not obtain the STOP declaration without the revision hearing transcript. Bullis also fails to show that he could not have amended his reconsideration motion to include any arguments suggested by the revision transcript if needed. And Bullis fails to show how withholding the revision hearing transcript equates to actual bias or the probability of unfairness. *See Chamberlin*, 161 Wn.2d at 38. On this record, a reasonable observer could not conclude that the superior court showed bias against Bullis when it did not approve the transcript for release before the reconsideration motion deadline or that Bullis could not have received a fair,

14

impartial, and neutral hearing. *See Gamble*, 168 Wn.2d at 187-88. We hold that Bullis fails to show a violation of the appearance of fairness doctrine or that he did not have a fair hearing.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

LEE, J.