IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,           )
                               )      No. 75817-9-I
              Respondent,      )
                               )      DIVISION ONE
       v.                      )
                               )
BRIAN DUBLIN,                  )      UNPUBLISHED OPINION
                               )
              Appellant.       )      FILED: October 16, 2017

SPEARMAN, J. — A trial court must grant a motion for post conviction DNA
(deoxyribonucleic acid) testing if favorable test results would establish the
individual's innocence on a more probable than not basis. Brian Dublin
challenges the denial of his motion for post conviction DNA testing. But because
favorable test results would not establish a probability that Dublin was innocent,
the trial court did not err in denying the motion. We also reject Dublin's assertion
that the trial court erred in denying his motion to disqualify the judge. Dublin fails
to show that the judge was biased or gave the appearance of bias, so that a
reasonable observer would conclude that Dublin did not receive an impartial
hearing. We affirm.

## FACTS

A jury convicted Dublin of three counts of first degree burglary, two counts of first degree rape, and one count of attempted first degree rape. The convictions were based on three separate incidents in the same community. In each case, an intruder entered a young woman's bedroom at night, threatened her, and raped or attempted to rape her.

Dublin's motion for post-conviction DNA testing concerns his conviction for raping A.B. and burglarizing her home. At trial, A.B. testified that she was asleep in her room one night in 2003 when she woke to see an intruder holding what appeared to be a knife. The intruder ordered A.B. to take off her clothes. He put his mouth on her neck, breasts, and vaginal area. The rapist pulled his pants down far enough to expose his penis, rubbed his penis in A.B.'s vaginal and anal area, and raped her vaginally. The rapist told A.B. he would kill her if she reported the incident and left.

A.B. reported the attack and submitted to a sexual assault examination. Samples were taken from her neck, breasts, anus, and vagina. Analysis of these samples revealed DNA belonging to a single unidentified male. A nurse who examined A.B. stated that, according to her notes, A.B. reported that she had been sexually inactive for about two months prior to the attack.

Detective Patricia Maley testified that she was assigned to gather evidence from A.B.'s room. Maley and A.B. both testified that the room was very messy and contained "immense amounts" of clutter. Verbatim Report of

2

Proceedings (VRP) at 578. Maley did not personally speak to A.B., but gathered items from the room based on information from other detectives.

Maley stated that she took the sheets and pillow cases from A.B.'s bed because the incident happened on the bed. She took a stuffed panda bear into evidence because she "believe[d]" Detective Gordon told her that A.B. said the perpetrator's head was on the bear. Id. at 410. Maley collected a pair of scissors because she did not know if the attacker brought a weapon or used something that was in the room to threaten A.B. Maley also took a pair of men's underwear because she "believe[d]" Detective Gordon told her that the underwear was "possibly" from the suspect. Id. at 413-14. These items were not tested for DNA.

Maley explained that the information she got "was from detective – excuse me – Deputy Patino who got it from the shift before him, and I got it from Detective Gordon who got it from somebody else. Eventually he said it was believed that the suspect may have left behind these items." Id. at 414-15. Dublin asked if it was correct that Gordon told Maley that A.B. said the underwear belonged to the suspect. Maley replied that she believed so but he would have to ask Gordon.

Neither Dublin nor the State asked Gordon about the items taken from A.B.'s room. No further information concerning the underwear, bedding, scissors, or stuffed animal was elicited at trial.

Testimony at trial established that two other young women were assaulted by an intruder who entered their bedrooms at night. Twelve year old G.G.

managed to escape to her parent's bedroom after the intruder grabbed her genital area. But sixteen year old E.P. was the victim of a completed rape. E.P. was acquainted with Dublin and named him as a possible suspect.

Analysis of a DNA sample obtained from Dublin determined with a high degree of certainty that he was the source of the DNA recovered in the sexual assault examinations of A.B. and E.P. Detectives also found a notebook containing a list of names in Dublin's home. A.B.'s full name was at the top of the list, E.P.'s full name was at the bottom of the list, and G.G.'s initials were in the middle of the list.

Dublin's theory at trial was that the sexual encounters with A.B. and E.P. were consensual. He testified that he had consensual sex with A.B. in his truck sometime in 2003. Dublin denied any encounter with G.G. The jury rejected these theories and convicted Dublin as charged as to A.B., G.G., and E.P.[1] We affirmed his conviction in State v. Dublin, 175 Wn. App. 1013, 2013 WL 2919004 (2013) (Dublin I).

In October 2014, Dublin, acting pro se, filed a motion seeking post-conviction DNA testing of the underwear, bedding, stuffed animal, and scissors from A.B's bedroom. Judge Laura Middaugh, who had presided over the trial, denied Dublin's motion. Dublin appealed. State v. Dublin, 192 Wn. App. 1051, 2016 WL 785599 (2016) (Dublin II). In Dublin II, we concluded that the record failed to show that the trial court applied the required presumption that the results

---

[1] The jury acquitted Dublin of an indecent liberties charge involving a separate victim.

4

of DNA testing would be favorable to Dublin. Id. at *2. We reversed and remanded for the trial court to apply the correct standard.

In March 2016, after our opinion in Dublin II issued but before the mandate, Judge Middaugh entered a second order denying Dublin's motion. This order explicitly acknowledged the presumption of a favorable result. On the joint motion of the parties, Judge Middaugh vacated this order because it issued before the mandate, in violation of RAP 7.2 and 12.5.

Before Judge Middaugh considered the motion on remand, Dublin moved to disqualify the judge under the appearance of fairness doctrine. He asserted that the judge had made up her mind to deny his motion and was "unwilling or unable to apply the legal standard requiring a presumption that the evidence will be favorable to Mr. Dublin." CP at 137. The judge declined to recuse herself. On remand, the trial court also denied Dublin's motion for post conviction DNA testing. Dublin appeals the denial of both motions.

## DISCUSSION

We first address Dublin's challenge to the denial of his motion for post-conviction DNA testing. We review a trial court's decision on a motion for post-conviction DNA testing for abuse of discretion. State v. Crumpton, 181 Wn.2d 252, 257, 332 P.3d 448 (2014) (citing State v. Riofta, 166 Wn.2d 358, 370, 209 P.3d 467 (2009)). The trial court abuses its discretion if its decision is manifestly unreasonable or if it was reached by applying the wrong legal standard. State v. Rafay, 167 Wn.2d 644, 655, 222 P.3d 86 (2009) (citations omitted).

A convicted person currently serving a prison sentence may file a motion requesting DNA testing with the court that entered the judgment of conviction. RCW 10.73.170(1). A successful motion must show that "the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3). In determining whether the motion meets this test, the trial court must "presume that the DNA results would be favorable" to the convicted person. Crumpton, 181 Wn.2d at 258. The trial court must grant the motion if, "considering all the evidence from trial and assuming an exculpatory DNA test result, it is likely the individual is innocent on a more probable than not basis." Id. at 260.

In Crumpton, for example, the Supreme Court reversed the trial court's denial of a motion for post conviction DNA testing. Id. at 261. In that case, a great deal of physical and circumstantial evidence incriminated Crumpton. Id. at 255-57. The victim's rape kit swabs, however, were not tested for DNA. Id. at 257. The Crumpton court held that, because there was only one rapist and no other sexual activity, any DNA recovered from the rape kit samples could only belong to the rapist. Id. at 261. The absence of Crumpton's DNA and the presence of another man's DNA on the swabs would establish that Crumpton was most likely innocent. Id. Because an exculpatory result would establish the likelihood that Crumpton was innocent, the trial court erred in denying his motion for post-conviction testing. Id.

In <u>Riofta</u>, on the other hand, the Supreme Court affirmed the denial of a motion for post conviction DNA testing. <u>Riofta</u>, 166 Wn.2d at 373. In that case, an assailant wearing a white hat got out of a stolen car and shot at a victim. <u>Riofta</u>, 166 Wn.2d at 362. The victim knew his assailant and identified him as Riofta. <u>Id.</u> The hat belonged to the car's owner. <u>Id.</u> at 363.

After Riofta was convicted, he moved for post conviction DNA testing of the hat. <u>Id.</u> The <u>Riofta</u> court considered both possible favorable outcomes: the absence of Riofta's DNA on the hat and the presence of third person DNA. <u>Id.</u> at 370. The court held that the absence of Riofta's DNA would not establish his innocence because, considering the short time the shooter wore the hat, it was not likely that the shooter left DNA on the hat. <u>Id.</u> And, assuming that Riofta was the assailant, his shaved head decreased the likelihood that he would have left DNA on the hat. <u>Id.</u> Likewise, the presence of third person DNA would not establish Riofta's innocence because any number of people could have worn the hat. <u>Id.</u> Because neither the absence of Riofta's DNA nor the presence of third-party DNA would raise a reasonable probability that he was innocent, the trial court did not err in denying his motion for post-conviction DNA testing. <u>Id.</u> at 373.

In this case, Dublin moved for post-conviction DNA testing of the underwear, bedding, stuffed animal, and scissors taken from A.B.'s room. The trial court denied the motion, ruling that neither the absence of Dublin's DNA nor the presence of another person's DNA on the untested items would establish a probability that Dublin was innocent. The order notes that "had there been

7

evidence that the men's underwear removed from the scene had been worn by the rapist the Court's response as to this item would have been different. However, the evidence at trial did not support this assertion." CP at 610.

Dublin contends that the trial court erred. He first challenges the trial court's conclusion as to the underwear. Dublin asserts that the record establishes that the rapist wore the underwear. Because underwear is unlikely to be shared, Dublin asserts that it is likely to contain only the rapist's DNA. Dublin argues that the absence of his DNA on the underwear and the presence of another man's DNA would support an inference that Dublin was innocent.

We disagree. The record in this case does not establish that the rapist wore the underwear. Detectives took the underwear into evidence because they believed it may have been worn by the perpetrator. But this supposition was not confirmed. A.B. stated that the rapist pulled his pants down far enough to expose his penis, indicating that he did not remove his underwear. The record provides no support for Dublin's theory that the rapist removed his underwear and left it in A.B.'s room.[2] Because the record does not link the underwear to the rapist, neither the absence of Dublin's DNA nor the presence of another man's DNA would establish Dublin's innocence. The trial court did not abuse its discretion in denying post conviction DNA testing of the underwear.

---

[2] Dublin urges this court to consider the police report documenting the items that were taken into evidence. The report is consistent with Detective Maley's testimony at trial and provides no further support for Dublin's argument.

8

Dublin next argues that the rapist may have left DNA on the stuffed animal and the scissors. This argument fails for the same reason. The record neither links these items to the rapist nor excludes the possibility that other people left DNA on the items.

Next, Dublin contends that the rapist touched the bedding and may have left semen on it. He argues that A.B. was sexually inactive for about two months before the incident and the record provides no evidence that a man other than the rapist was in her bed. Dublin asserts that, if semen from another male were recovered from the bedding, it would corroborate his claim that he never entered A.B.'s bedroom but had consensual sex with her in his truck. Id.

We reject this argument. In evaluating a motion for post conviction DNA testing, we assume exculpatory test results and consider those results along with all the evidence from trial. Crumpton, 181 Wn.2d at 260. The evidence in this case includes the results of DNA testing of the swabs from A.B.'s sexual assault examination. Dublin's DNA, and that of no other man, was recovered from A.B.'s vaginal swabs, anal swabs, and from swabs of A.B.'s neck and breasts. In light of this evidence, even if another man's DNA were found on the bedding, it would not establish a probability that Dublin is innocent. The trial court did not abuse its discretion in denying Dublin's motion for post conviction DNA testing.

Dublin next asserts that Judge Middaugh violated the appearance of fairness doctrine by declining to recuse herself. We review a trial court's decision

9

on recusal for abuse of discretion. State v. Gentry, 183 Wn.2d 749, 761, 356 P.3d 714 (2015) (citing State v. Davis, 175 Wn.2d 287, 308, 290 P.3d 43 (2012)).

Under the appearance of fairness doctrine, a judge must not be biased or give the appearance of bias. State v. Solis-Diaz, 187 Wn.2d 535, 539, 387 P.3d 703 (2017) (citing State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010)). Judges enjoy a presumption of "'honesty and integrity.'" State v. Chamberlin, 161 Wn.2d 30, 38, 162 P.3d 389 (2007) (quoting Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)). The party asserting a violation of the appearance of fairness doctrine must make a showing of a judge's actual or potential bias sufficient to overcome this presumption. Id. In evaluating the trial court's decision on recusal, the test is whether a reasonable observer who knows and understands the relevant facts would conclude that the parties received an impartial hearing. Solis-Diaz, 187 Wn.2d at 539.

Dublin contends that Judge Middaugh abused her discretion in declining to disqualify herself. He argues that the November 2014 and March 2016 orders denying his motion for post-conviction DNA testing expressed the judge's firm conclusion that Dublin's motion should not be granted.[3] Dublin asserts that a reasonable observer would conclude that Judge Middaugh might not be able to consider the issue again with an open mind. Id.

---

[3] Dublin also appears to assert that the judge's 2014 order was procedurally flawed because she engaged in an ex parte contact and denied Dublin's right to oral argument. This argument is without merit. Dublin provides no evidence of an ex parte contact and he provides no authority for the assertion that Dublin had a right to oral argument.

10

We disagree. Judge Middaugh erred in issuing the November 2014 order because the order did not reflect application of the correct legal standard. Dublin II, 192 Wn. App. at *2. The March 2016 order stated the correct legal standard but was issued prematurely. The orders were erroneous. But legal errors alone do not warrant recusal. State v. McEnroe, 181 Wn.2d 375, 388, 333 P.3d 402 (2014) (citing Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)). Dublin fails to make a showing of actual or potential bias sufficient to overcome the presumption that he received an impartial hearing. Chamberlin, 161 Wn.2d at 38.

Solis-Diaz in instructive. In that case, a juvenile was convicted in connection with a drive-by shooting. Solis-Diaz, 187 Wn.2d at 537. We affirmed his conviction but remanded for resentencing. Id. At resentencing, the judge expressed his disagreement with this court's order. Id. The judge found the remand for resentencing insulting and stated that it amounted to an opinion that he was "'ignorant, lazy, or stupid. . . .'" Id. The judge disputed this court's conclusion that Solis-Diaz received ineffective assistance of counsel and asserted that the original sentencing hearing was adequate. Id. at 538. The judge stated that his original sentence served legislative goals and had deterred similar gang related activity. Id. at 538-39. He imposed the same sentence. Id. at 537. We again vacated the sentence and remanded for resentencing. Id. at 539. But we declined Solis-Diaz's request to disqualify the sentencing judge. Id.

11

The Supreme Court accepted review of the disqualification issue. Id. at 536-37. The Solis-Diaz court held that the judge's comments reflected his "frustration and unhappiness" and "strongly suggest[ed]" that he had determined to impose the original sentence regardless of information presented at resentencing. Id. at 541. Analyzing the issue under the appearance of fairness doctrine, the Solis-Diaz court held that an objective observer could reasonably question the judge's impartiality. Id. at 540-41. The court ordered resentencing to take place before a different judge. Id.

In this case, unlike in Solis-Diaz, the judge made no comments disagreeing with the need for remand or suggesting that she would not reconsider Dublin's motion with an open mind. Dublin points to nothing indicating that Judge Middaugh failed to consider all the evidence before her on remand.[4] An objective observer would conclude that Dublin received an impartial hearing. The judge did not abuse her discretion in refusing to disqualify herself.

Affirmed.

WE CONCUR:

---

[4] At oral argument, Dublin conceded that the judge considered the briefing and other materials submitted on remand.